## Wheeler & Patton v. Gillespie, et al.

(Decided October 9, 1928.)

### Appeal from Johnson Circuit Court.

1. **Estoppel.**—Where landowner induced another to procure instrument conveying interest in oil and gas to third person by representing that it constituted royalty interest and thereafter repudiated oral contract to execute lease for development, he was estopped from subsequently asserting that interest thus purchased for him did not constitute a royalty interest as represented.

2.  Pleading.—Pleading treated as amended petition for purpose of raising plea of estoppel was efficacious, even though not so styled in caption.

C. B. WHEELER for appellants.

WHEELER & WHEELER, JOHN GARDNER, ED. C. O'REAR and FOWLER, WALLACE & FOWLER for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

On May 24, 1917, John F. Conley and wife, by a deed which designated them as "party of the first part," conveyed to E. O. Rhoades and K. D. White, of Tulsa, Okla., who were designated as "party of the second part," an interest in the oil and gas in and under a particularly described 100-acre tract of land in Johnson county, Ky. The granting clause in the deed reads:

> "The party of the first part in consideration of $150.00, paid by the party of the second part, the receipt and payment of which is acknowledged, do hereby grant and convey by deed of general warranty unto the party of the second part, his heirs and assigns forever the one-eighth part of all the oil and gas in and underlying and produced from the following described piece or parcel of land, together with the right and privilege of the land for oil and gas."

The tract of land was then described, following which this clause was added:

> "Subject to any valid lease for oil and gas now on the premises, only while the same remains in force, but hereby granting and conveying the whole part of all royalty and rents reserved under such lease or leases."

The lease referred to in this deed was executed to Joseph L. Bond, and dated March 7, 1917. On the 25th of September, 1922, Rhodes and White, the grantees in the deed supra, conveyed to R. G. Gillespie "all of the right, title and interest, they or either of them have (had) in or to the oil and gas privileges, in or under the above described tract of land," the description being the same as in the first deed supra. On the 28th of November, 1922, J. F. Conley and wife executed a second lease to S. J. Patton and S. D. Wheeler, who drilled four producing

wells thereon, after which, by the terms of the lease, further production was conducted jointly by the lessors and lessees, and two other paying wells drilled.

Gillespie construed his deed as giving him a one-eighth royalty interest in the oil produced, and demanded this amount from the parties to the lease, which they refused on the ground that the deed conveyed him a working interest only, and made him liable for one-eighth of the cost of development. Thereupon Gillespie filed suit in equity against those parties jointly, seeking to have his deed construed to pass a royalty interest and to recover one-eighth of all the oil produced. Defendants answered, traversing the allegations of the petition, and by counterclaim set out at length their construction of the Gillespie deed, which was that it passed a one-eighth working interest only. They further alleged that they had expended $26,840, in development, and sought to recover from Gillespie one-eighth of this, to wit, $3,355.11. Gillespie demurred to this pleading, and at the same time filed a reply, pleading facts constituting an estoppel. This pleading was never controverted.

Much proof was taken upon the issue of estoppel. It appears that during the first week of August, 1922, Gillespie's agents sought a development lease on this land. At that time the Bond lease had expired and lapsed by its own terms, but Conley desired to procure a reconveyance of the Rhodes and White interest to himself. He informed the agents that this was a royalty interest and proposed, if they would buy it and let him have it back, he would then execute the lease to Gillespie for development. They agreed to do this if the interest could be procured at a reasonable figure, and Mr. Gillespie approved of it. Mr. Gillespie was in Michigan, and Rhodes and White resided in Tulsa, Okla. It was understood by the parties that it would take several weeks to complete the negotiations. No time limit was set, but the agents undertook to attend to it as quickly as possible. It developed that one of the firm of Rhodes & White was out of the United States; however, he was reached and Gillespie purchased the interest in question for $2,600. Thereupon on September 25, 1922, Gillespie's agent called on Mr. Conley to carry out his agreement, but he declined; first complaining of the delay in procuring the Rhodes interest, and finally saying he could do better leasing the property to other parties. As the negotiations had been in parol,

Gillespie took no steps to enforce the agreement to lease for development.

On final hearing the court rendered judgment in favor of Gillespie, granting the relief sought in his petition. The defendants appeal.

The judgment does not indicate the construction the court placed upon the Gillespie deed, nor do we think this material, because the proof clearly establishes the fact that appellee procured the Rhodes-White interest for Conley, and upon his representation that it was a royalty interest, and also that the consideration paid was based on the assumption that it was a royalty interest. Appellee having thus furnished the consideration for the parol contract of leasing, and Conley having repudiated that contract, he is estopped from asserting that the interest thus purchased for him is other than as represented by him. Mr. Wheeler also admits that at the time of the execution of the lease to him and Patton, he knew there was a question as to the Rhodes-White interest, and that plaintiffs were claiming it was a royalty interest. This was sufficient to put him on inquiry.

Appellants insist that as the demurrer to the second paragraph of the answer and counterclaim was sustained, there was nothing upon which to base an estoppel, and that it was not necessary for them to controvert the reply pleading that issue, or to meet it in proof. As to this the record shows, that the demurrer to the second paragraph of the answer, and the reply were filed on the same day. There is no record of any action upon the part of the court at that time. It does appear that something over a year afterward, and after practically all of the proof was taken, a nunc pro tunc order was entered filing the reply and sustaining a demurrer as of the previous date. But even though the demurrer to the second paragraph was sustained, the first paragraph of the answer had denied Gillespie's construction of the deed, and an estoppel could be pleaded to this as pertinently as it could have been to the affirmative construction placed by Conley upon the deed; or such plea could have been raised by an amended petition, and if this pleading was so treated it was efficacious, even though not so styled in the caption. It follows that both on the pleadings and proof appellee was entitled to the relief awarded him.

Wherefore, perceiving no error, the judgment is affirmed.